634 P.2d 954

**STATE of Arizona, Appellee,**

v.

**Clarence Albert ROMERO, Appellant.**

**No. 5101.**

Supreme Court of Arizona,
In Banc.

Sept. 29, 1981.

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Crim. Div., David R. Cole, Asst. Atty. Gen., Phoenix, for appellee.

Wade Church, Phoenix, for appellant.

GORDON, Justice:

Appellant Clarence Albert Romero was convicted by a jury of child molestation, a class 2 felony, in violation of A.R.S. § 13–1410.[1] The trial court sentenced appellant to seven years, the presumptive sentence under A.R.S. § 13–701(B) for a nondangerous, nonrepetitive class 2 felony. Taking jurisdiction pursuant to A.R.S.Const. Art. 6, § 5(3), and Rule 47(e)(5) of the Rules of the Supreme Court, we affirm.

At about 6:00 p. m. on October 20, 1978, the six-year old victim and her twin brother were playing in their front yard in Phoenix, Arizona. A man drove up and asked the children what color underwear they were wearing. The boy said that his underpants were white, and the girl said that hers were pink. The man told the victim he did not believe her, so she raised her dress to show him she was telling the truth.

The man then gave the boy a quarter and asked him for a glass of water. When the boy went inside his house, the man stuck his hand inside the victim's panties and rubbed her vagina. When the boy came out with

---

1. That statute requires that a person convicted of child molesting serve not less than two-thirds of the sentence imposed and, in any case, not less than five years.

the glass of water, the man removed his hand. He asked the boy to go back inside and get more water and some ice cubes. When the boy returned to the house, the man repeated the molestation. The victim testified that she could see inside the man's car and saw that his pants were down and he was "shaking his penis." When the boy returned and another car drove by, the man removed his hand from the victim's panties, and drove away.

The victim, crying, ran into her house and told her twelve-year old sister what had just happened. The sister went outside as two cars drove by the house. The twin brother pointed to the second car and said, "That's the one." The older sister jumped on her bicycle and chased the car. She pursued it for several blocks, got a look at the driver, and obtained the license plate number.

The plate number was reported to the police. They ran a records check on it and discovered that the car was registered to appellant's daughter. The police talked to appellant later that night, and he told them he had been the only person driving his daughter's car that day. He also stated that at the time of the molestation, he was either at home or at a friend's house.

On appeal from his conviction, appellant raises five issues: (1) Did the trial court err in admitting evidence of a prior bad act that occurred on January 16, 1978?; (2) Was his pretrial identification suggestive, thus tainting the in-court identifications?; (3) Did the prosecutor engage in misconduct during trial by looking at notes the appellant wrote to his counsel?; (4) Did the prosecutor fail to properly disclose a list of witnesses as required by Rule 15.1(a) of the Rules of Criminal Procedure?; and (5) Did the trial court err in not ordering a mental examination before sentencing? We will address each issue individually.

## THE PRIOR BAD ACT

At trial, appellant's defenses were that he was at a bar when the molestation occurred and that he was misidentified. To prove identity, the prosecution introduced evidence of a prior bad act. On January 16, 1978, about 9 months before the charged molestation, appellant had accosted two other six-year olds—a girl and a boy. The girl testified that as she and her friend were walking home from kindergarten, the appellant drove up waving around a pair of panties. He talked with the two children, and they could see that his pants were pulled down to his knees. Both children positively identified appellant and his car when he subsequently drove through the neighborhood. Appellant was arrested and pled guilty in city court to a breach of the peace.

Appellant argues that the prior bad act should not have been used either substantively or to impeach his character witnesses' knowledge of his reputation. He asserts that the prior act was not sufficiently similar to the instant charge, it was not near enough in time to the instant charge, and it was not sufficiently proved, especially because it resulted in a conviction for a breach of the peace.

 Evidence of bad acts other than those for which a defendant is currently on trial are generally inadmissible. Rule 404(a), Rules of Evidence; *State v. Rose*, 121 Ariz. 131, 589 P.2d 5 (1978). Such acts are admissible as substantive evidence, however, to prove identity. Rule 404(b), Rules of Evidence. To come within this exception, the prior act must not be too misleading or prejudicial. *Rose, supra.* In deciding whether to admit a prior bad act, the trial court is given broad discretion. *State v. Brown*, 125 Ariz. 160, 608 P.2d 299 (1980); *Rose, supra.* The trial court properly exercised its discretion in the instant case.

The prior bad act of January, 1978 was "sufficiently similar" to the crime charged. *See Brown, supra.* In both cases, the appellant accosted a six-year old boy and a six-year old girl near a schoolyard. Appellant drove up in a car to meet all the victims and used underwear or talk about it to gain the victim's attention. In the first incident, he drove his own car; in the second incident,

he drove his daughter's car. His pants were lowered in both instances. Each time, one of the children identified the appellant's car when he drove through the neighborhood again after the molestation. The acts were sufficiently similar to raise a reasonable inference that the same person committed both crimes. *See State v. Jerousek*, 121 Ariz. 420, 590 P.2d 1366 (1979).

The acts were also sufficiently close in time. In *State v. La Mountain*, 125 Ariz. 547, 611 P.2d 551 (1980), the prior acts and the crime charged occurred fifteen months apart. In *State v. Finley*, 108 Ariz. 420, 501 P.2d 4 (1972), prior bad acts occurring over a five-year period were admitted. Thus, the nine month interval in the instant case is not unusually long. More importantly, there is no showing of prejudice due to the elapsed time.

Finally, sufficient evidence of the prior bad act was produced at trial. Although the January, 1978 incident resulted only in a breach of the peace conviction, the underlying facts were relevant to the instant case.

> "[W]here the identity of the defendant is the question in issue, any fact which tends to establish the identity has probative value and if offered for that purpose it is receivable. Other acts or crimes may be shown if they are relevant, regardless of their criminal character."

*State v. Francis*, 91 Ariz. 219, 222, 371 P.2d 97, 99 (1962). The January, 1978 incident was admissible as a prior bad *act* regardless of whether it was also a *crime*. One of the victims of the prior bad act and her mother testified at trial. This was a sufficient quantum of evidence to allow admission of the act. *See State v. Jerousek*, 121 Ariz. 420, 590 P.2d 1366 (1979). Therefore, the prior bad act was properly admitted as substantive evidence of appellant's identity.

■ As part of the defense, several character witnesses testified to appellant's good reputation in the community. To impeach these witnesses' knowledge of appellant's reputation, the prosecutor asked two of them if they had heard of appellant's arrest for the January, 1978 incident. Appellant's

attorney objected to these questions, and his objections were sustained. On appeal appellant urges us to find that these references to the January, 1978 incident unduly prejudiced his case. Since evidence of the prior bad act had previously come out in the state's case-in-chief, the additional references could have caused appellant no undue prejudice. In fact, the trial court could have allowed these questions because a person's arrests, even if they do not result in conviction, would be within the knowledge of people truly familiar with that person's reputation. *See Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). It is within the trial court's discretion to exclude such questions, but there was no error in asking them as the prosecutor had a legal and factual basis for the questions, he had received the court's permission before trial to ask such questions, and the acts were already in evidence. We find no error in the prosecutor's attempted use of the prior bad act to impeach appellant's character witnesses.

## PRETRIAL IDENTIFICATION

After the molestation, both the victim and her sister, who had chased the car, gave a description of the assailant to the police. Based on this description, the identification of appellant's daughter's car as the one driven by the assailant, and appellant's admission that he was the only person driving that car on the day of the molestation, the police assembled a photographic lineup consisting of five pictures, including appellant's. The police then showed the lineup to the victim and her sister, separately. Both girls immediately and positively identified appellant's picture as that of the molester. After each girl picked out appellant's picture, the police told her that she had picked out the "right" picture.

■ Appellant alleges that the lineup was unduly suggestive both because none of the pictures resembled the description of the molester given to the police and because of the police comment that each girl had picked the correct photograph. Our review of the description and photographs show

that appellant's argument is not supported by the facts. Although the description given to the police is not identical to appellant's, it does sufficiently resemble him. The five pictures used in the lineup all look very much alike. That the victim and her sister immediately and positively identified appellant from a group of five similar pictures refutes his argument that the procedure was not trustworthy and he was misidentified.

■ As for the comment by the police, we do not approve of such remarks. They may tend to bolster a witness' otherwise tenuous identification. *See State v. Richie*, 110 Ariz. 590, 521 P.2d 1136 (1974). But we have held that when the identification procedure is otherwise not suggestive, such comments do not taint an initially fair procedure. *State v. McDonald*, 111 Ariz. 159, 526 P.2d 698 (1974); *Richie, supra*.

## PROSECUTORIAL MISCONDUCT

■ Appellant accuses the prosecutor of misconduct in improperly viewing notes written by appellant to his counsel. Throughout the state's case-in-chief, appellant wrote notes to his counsel to suggest questions for cross-examination of the state's witnesses. After returning from a brief recess in the trial, his counsel noticed that the notes were missing from the defense table. The prosecutor later cross-examined appellant with questions based on the contents of the notes.

The allegation, if true, might constitute serious misconduct on behalf of the prosecutor. *See* DR 1–102(A)(4), Rule 29(a), Rules of the Supreme Court. But without reaching the merits of appellant's claim, we observe that he did not raise an objection at trial even though he then knew all of the relevant facts of the alleged misconduct. There was no fundamental error because the contents of the notes went to purely collateral issues in the case. Therefore, appellant waived his right to raise this issue on appeal. *See, e. g., State v. Mata*, 125 Ariz. 233, 609 P.2d 48 (1980), and authorities cited therein.

## DISCLOSURE OF WITNESSES

■ Rule 15.1(a), Rules of Criminal Procedure, places an affirmative duty on the prosecutor to disclose to the defense the names and addresses of all persons whom the state will call as witnesses in its case-in-chief. Rule 15.2(c) places a similar duty on the defense. Appellant states that while he gave a specific list of witnesses to the prosecutor, the prosecutor only disclosed the relevant police reports and said that the names of the witnesses called would be in the reports. Appellant claims prejudice in this because the police reports contained some twenty names. To be certain that all potential witnesses were interviewed, he would have had to contact all twenty people as the prosecutor did not designate which people would be witnesses.

Appellant did not raise this issue at or before trial; thus, he has waived the right to raise it on appeal because there was no fundamental error. *See Mata, supra*. This is not to say, however, that we approve of the prosecutor's practice. In a case where the appellant properly preserves the issue for appeal and demonstrates some prejudice, we would more closely scrutinize the prosecutor's discovery procedure.

## MENTAL EXAMINATION

■ Rule 11.1, Rules of Criminal Procedure, provides that a person shall not be sentenced while mentally incompetent. Appellant's counsel, in his motion for new trial, requested a Rule 11 examination to determine whether his client was competent to be sentenced. The grounds for this motion were that: (1) A Dr. Richard I. Lanyan had examined appellant and found that he had "severe mental problems;" (2) the prosecutor stated in a supplement to the presentence report that appellant had "severe mental problems;" (3) the presentence report recommended that appellant enroll in a mental health program; and (4) appellant had a "serious drinking problem."

Under Rule 11, a court need order a mental examination only if "reasonable grounds" exist to believe that the defend-

ant is unable to understand the proceedings or assist counsel. The trial court is given broad discretion in determining whether reasonable grounds exist, and the trial court's decision will be upheld in the absence of a manifest abuse of discretion. *State v. Ohta,* 114 Ariz. 489, 562 P.2d 369 (1977); *State v. Verdugo,* 112 Ariz. 288, 541 P.2d 388 (1975). In this case, there is no showing of a manifest abuse of discretion in refusing to order a mental examination. The basis for appellant's motion does not compel a finding of reasonable grounds to order such an examination.

### OTHER ERROR

■ A.R.S. § 13–4035(B) requires us to review the entire record on appeal. The purpose of this review is to search for fundamental error, *i. e.,* "error as goes to the foundation of the case, or which takes from a defendant a right essential to his defense." *State v. Pulliam,* 87 Ariz. 216, 222, 349 P.2d 781, 785 (1960), *rev'd on other grounds, State v. Cobb,* 115 Ariz. 484, 566 P.2d 285 (1977).

A review of the record indicates that appellant's original counsel, a member of the Maricopa County Public Defender's Office, filed a motion challenging the constitutionality of A.R.S. § 13–1410, the statute under which appellant was convicted and sentenced. Although appellant's second counsel failed to raise the issue on appeal, if A.R.S. § 13–1410 is unconstitutional, convicting appellant for violating it would clearly be an error going to the foundation of the case. We therefore proceed to consider appellant's pretrial challenge to the constitutionality of A.R.S. § 13–1410.

A.R.S. § 13–1410 prohibits the fondling, playing with, or touching of the private parts of a person under the age of fifteen years. "Private parts" means the genital and excretory organs and does not include the female breast. *State v. Carter,* 123 Ariz. 524, 601 P.2d 287 (1979) (interpreting the pre-1978 version of A.R.S. § 13–1410). Violation of the statute is a class 2 felony, and there is a mandatory imprisonment provision.

A.R.S. §§ 13–1404 and –1401(2) prohibit any fondling or manipulating of the genitals, anus, or female breast of a child under the age of fifteen years who is not the molester's spouse. Sexual abuse under § 13–1404 is a class 5 felony, and there is no mandatory imprisonment provision.

With the exception of the female breast, A.R.S. §§ 13–1404 and –1410 proscribe essentially the same conduct. Relying on this, appellant's original counsel argued that the statutes violated the equal protection clause of the Fourteenth Amendment of the United States Constitution because defendants similarly situated are subject to differing penalties at the unguided discretion of the prosecutor. Although the statutes do cover the same conduct, we find no constitutional infirmity.

The equal protection clause is not violated by the existence of discretion in the prosecutor.

"In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, 'the conscious exercise of some selectivity in enforcement is not in itself a Federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446."

*Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668–69, 54 L.Ed.2d 604, 611–12 (1978) (footnote omitted); *accord State v. Murphy,* 113 Ariz. 416, 555 P.2d 1110 (1976). There is no question that the Legislature could proscribe the conduct covered by A.R.S. §§ 13–1404 and –1410. Appellant has made no showing that he was the subject of prosecution based on an unjustifiable selection standard. Thus, we find no constitutional error in his conviction under A.R.S. § 13–1410 even though A.R.S. § 13–1404 also prohibited the identical conduct.

For the reasons stated above, we affirm appellant's conviction and sentence.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and CAMERON, JJ., concur.