706 P.2d 718

**STATE of Arizona, Appellee,**

v.

**Estevan BORBON, Appellant.**

**No. 6339.**

Supreme Court of Arizona,
In Banc.

Sept. 6, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Diane D. Hienton, Asst. Attys. Gen., Phoenix, for appellee.

Law Offices of Keller & Postero by Peter B. Keller, Tucson, for appellant.

CAMERON, Justice.

Defendant, Estevan Borbon, was convicted and adjudged guilty of attempted armed robbery with a dangerous or deadly weapon, A.R.S. §§ 13–1001, –1904, aggravated assault, A.R.S. § 13–1204, resisting arrest, A.R.S. § 13–2508, and criminal trespass, A.R.S. § 13–1504. Because defendant was on probation from an earlier matter, solicitation of the sale of cocaine, he was sen-

tenced to life imprisonment without possibility of parole for twenty-five years for the robbery, A.R.S. § 13–604.01, two and one-quarter years for the assault, A.R.S. § 13–604, two and one-quarter years for the resisting arrest, A.R.S. § 13–604, and two and one-quarter years for the criminal trespass, A.R.S. § 13–604. All sentences were to run concurrently.

We must decide the following issues:

I. Did the trial court err in refusing to grant defendant's Rule 11 request for a hearing to determine his competency to stand trial?

II. Did the trial court err in refusing to grant defendant's motion to produce police records of one of defendant's witnesses?

III. Did the trial court improperly instruct the jury concerning the term "readily capable of causing serious physical injury?"

IV. Was defendant denied effective assistance of counsel?

V. Did the trial court err in denying defendant's Rule 32 petition for an evidentiary hearing concerning the effectiveness of trial counsel?

The facts follow: On 19 December 1983, Donald Gilmore was working the "graveyard shift" at a Thrifty Oil Gas Station located in south Tucson, Arizona. At some time after midnight, a black car drove into the station and defendant and another man got out and paid for about 68 cents of gasoline. They then asked Gilmore to give them more gas, free of charge. When Gilmore refused, defendant began to yell at him and threatened to rob him. After several minutes, the two men got back into the car. As they were driving away, Gilmore wrote down the license number of their car.

About half an hour later, defendant returned to the gas station and began hitting the window of the cashier's booth, in which Gilmore was sitting, with a tire iron. The booth was locked and the windows were made of bulletproof glass, preventing defendant from breaking in. As Gilmore picked up the phone to dial the police, Officer Clarence Johnson drove up to the station.

Officer Johnson had been patrolling that area of town, making a security check of the businesses located there. He noticed a black car parked by the Valley National Building. As he drove toward it, the car pulled out and began driving away. Officer Johnson followed the car and, while doing so, saw defendant at the Thrifty station hitting the cashier's booth. When defendant saw the police car, he attempted to flee. The officer followed him in the car for a couple of blocks and then got out to attempt to arrest him. Defendant turned on him with the tire iron, dropped the iron, and continued to run.

Defendant then forced his way into one of the nearby homes. Officer Johnson followed him in and again attempted to arrest him. During the ensuing struggle, defendant hit Johnson in the face and kicked him. Finally, and with the help of a man who was staying in the house, the officer handcuffed defendant and placed him under arrest. Defendant appeals from his conviction and sentence and from a denial of relief sought pursuant to Rule 32, Rules of Criminal Procedure, 17 A.R.S. The two matters were consolidated in this opinion.

## I.

### DEFENDANT'S RULE 11 MOTION

Prior to trial, defendant moved for an examination to determine his competency. Rule 11.1, Arizona Rules of Criminal Procedure, 17 A.R.S. Dr. Richard Hinton, a psychologist who works for the Pima County Court Clinic, conducted an initial, prescreening evaluation, pursuant to a local Pima County practice, in which he concluded that there were insufficient grounds to pursue a formal Rule 11 proceeding. Dr. Hinton's report stated that:

Mr. Borbon was able to accurately state the charges against him. He identified his attorney as Donald Klein and demonstrated an adequate understanding of his role and function. He also articulated clearly the role and function of the judge

and prosecutor in criminal proceedings. This man is felt to be capable of giving informed consent to a plea agreement, should one be offered to him.

The trial court denied defendant's request, stating:

I have read Dr. Hinton's report now several times previously, and again today, and if we are to use this screening process at all and have it mean anything, then I think I must follow his conclusions and whatever language he may have used in describing all of it, he certainly finds not to warrant formal Rule 11 proceedings, so I will deny your motion.

Defendant now argues that the trial court's ruling constituted prejudicial error.

■ Rule 11.2 permits either party to a criminal proceeding to "move for an examination to determine whether a defendant is competent to stand trial * * *." Once the party has properly made this motion, the trial court must determine whether reasonable grounds for an examination exist. Rule 11.3. We have stated that "[r]easonable grounds exist [when] there is sufficient evidence to indicate that the defendant is not able to understand the nature of the proceeding against him and to assist in his defense." *State v. Salazar*, 128 Ariz. 461, 462, 626 P.2d 1093, 1094 (1981). Evidence is sufficient when it creates a doubt in the court's mind as to defendant's competency. *State v. Messier*, 114 Ariz. 522, 525, 562 P.2d 402, 405 (App. 1977). Whether reasonable grounds exist is a determination within the trial judge's discretion and his decision will not be reversed unless there is a manifest abuse of this discretion. *State v. Romero*, 130 Ariz. 142, 147, 634 P.2d 954, 959 (1981).

■ Pima County has developed an uncodified practice in which defendants who seek Rule 11 appointments are required to submit to a pre-Rule 11 screening. *See State v. Neal*, 143 Ariz. 93, 99, 692 P.2d 272, 278 (1984). Defendant argues that the effect of this practice is to impermissibly delegate the trial court's decision as to whether reasonable grounds exist to the pre-screening doctor. We do not, however, find this arrangement substantially different from the situation that we approved of in *State v. Cook*, 115 Ariz. 188, 564 P.2d 877 (1977). There, the defendant was initially examined by two psychiatrists and found competent to stand trial and assist in his own defense. Approximately three months later, his attorney informed the court that he believed that his client's condition had deteriorated. The trial court asked one of the psychiatrists to re-examine the defendant. The doctor stated that, in his opinion, the defendant's condition had not changed since the initial examination and, based on this evaluation, the court did not order further testing. We affirmed the trial court's actions stating that "[t]his was a preliminary determination of reasonable grounds only." *Id.* at 191, 564 P.2d at 880. In essence, the Pima County practice is no different: one doctor makes an evaluation which the trial court may use in deciding whether reasonable grounds exist to order further examination by two mental health experts. So long as his recommendations are used only in determining whether reasonable grounds exist, *see State v. Lane*, 128 Ariz. 360, 361, 625 P.2d 949, 950 (App.1981) ("[t]he trial judge * * * must be careful that this preliminary hearing does not become a determination of competency itself"), we find this practice acceptable.

■ We must admit that the language of the trial judge in denying the motion gives us concern. It could appear that the trial judge relied upon Dr. Hinton's recommendation as conclusive rather than using the recommendation as an aid in making his decision, as the rule requires. It is the trial judge who must determine if reasonable grounds exist for the hearing and the record should make it clear that is the case. In the instant case, the statement of Dr. Hinton was more than sufficient upon which to base a conclusion that defendant could assist in the preparation of his defense. From these facts, we find no abuse of discretion in denying the Rule 11 motion.

## II.

## DISCOVERY

The black car that drove into the gas station was registered to Manny Lopez. Defendant made a motion in limine requesting "any and all prior arrests and convictions of Manny Lopez for giving false information to police officers, carrying concealed weapons, assault and disorderly conduct." The state opposed the motion, arguing that it had no intention of calling Lopez as a witness. Defendant explained that he was going to call Lopez to testify and wanted the information in case he chose to treat Lopez as an adverse witness and impeach him. The trial court denied this request. At trial, defense counsel did call Lopez, who denied knowing defendant but admitted that he had driven his car frequently in the area where the robbery occurred. Defendant did not ask about his prior arrests and the state did not ask any questions at all on cross-examination. Defendant now argues that the trial court's denial violated both our own Rules of Discovery and defendant's constitutional right, under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218 (1963), to receive from the state information that is material to guilt or punishment.

Discovery in criminal cases is governed by Rule 15, Arizona Rules of Criminal Procedure, 17 A.R.S. Rule 15.1 deals with the state's obligations and requires the prosecutor to disclose all prior felony convictions of witnesses whom the prosecutor expects to call at trial, Rule 15.1(a)(7), and those convictions that the prosecutor intends to use to impeach defense witnesses, Rule 15.1(c). Because the state did not intend to call Manny Lopez as a witness, nor did it investigate his arrest record in order to impeach him, the prosecution was not obligated, under these provisions, to disclose the requested materials.

Rule 15.1(a)(7) also requires the state to disclose all information tending to mitigate or negate defendant's guilt. This section was intended to clarify and codify the prosecutor's constitutional obligations to disclose material information as outlined in *Brady, supra.* *See* Comment to Rule 15.-1(a)(7). Recently, the United States Supreme Court has defined "materiality" in the context of impeachment evidence. In *United States v. Bagley,* defendant had requested "* * * the prior criminal records of witnesses, and any deals, promises or inducements made to witnesses in exchange for their testimony." — U.S. ——, ——, 105 S.Ct. 3375, 3377, 87 L.Ed.2d 481, 486 (1985). The prosecution did not disclose certain payments pursuant to a "Contract for Purchase of Information and Payment of Lump Sums Thereof." The Court realized that this evidence was important because it was the type of information "that the defense might have used to impeach the Government's witnesses by showing bias or interest." *Id.* 105 S.Ct. at 3180. In finding that the government's failure to disclose did not rise to the level of a constitutional violation, the Court defined the standard of materiality as follows: "[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* 105 S.Ct. at 3184.

▉ Applying that standard to the instant case, we find no error in the trial court's denial. Defendant apparently wanted to show that it was Lopez and not he, who attempted to rob the store. The evidence to the contrary was overwhelming. Officer Johnson saw defendant banging on the window of the cashier's booth with a tire iron and did not lose sight of him while making the arrest. The cashier also made an in-court identification of defendant. In light of this testimony, we do not find that the requested information was material, *Bagley, supra,* or would have changed the result of the proceeding. We find no error.

## III.

## DANGEROUS OR DEADLY WEAPONS

Defendant raises two arguments concerning the allegation that he used a "dead-

ly or dangerous weapon while committing the robbery." He argues first that he was entitled to a directed verdict of acquittal on the greater offense of attempted robbery because the state had failed to prove that the tire iron was readily capable of causing physical injury. Second, defendant contends that the trial court improperly instructed the jury as to the meaning of the phrase "readily capable."

### 1. Directed Verdict

■ Pursuant to Rule 20, Arizona Rules of Criminal Procedure, 17 A.R.S., a defendant is entitled to a directed verdict of acquittal when there is "no substantial evidence to warrant a conviction." We have defined substantial evidence as "more than a scintilla and * * * such proof as a reasonable mind would employ to support the conclusion reached." *State v. Clabourne*, 142 Ariz. 335, 345, 690 P.2d 54, 64 (1984). In this case, we find the evidence sufficient to support the conviction. Under A.R.S. § 13–1904:

A. A person commits armed robbery if in the course of committing robbery as defined in § 13–1902, such person or an accomplice:

\* \* \* \* \* \*

2. Uses or threatens to use a deadly weapon or dangerous instrument or a simulated deadly weapon.

Additionally, the legislature has defined dangerous instrument as "anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury." A.R.S. § 13–105(7).

Defendant argues that because the cashier's booth was made of bulletproof glass, which defendant could not shatter, he was not actually *"readily* capable of causing physical injury" to the cashier. We do not agree. Defendant began hitting the door so violently that the occupant was concerned that defendant would be able to break down the door and harm him. We find this evidence sufficient to satisfy the statutory language and hold that the trial

judge acted properly in denying the motion for a directed verdict.

### 2. Jury Instruction

Defendant also argues that the trial court gave an incomplete jury instruction. Defendant had requested that the following charge be given:

An instrument is readily capable of causing serious physical injury when it can quickly, easily or at once cause serious physical injury considering the manner in which it is used or threatened to be used. It is not sufficient if it is merely possible for serious physical injury to be caused.

The judge denied the request and instead gave the following instruction:

Dangerous instrument means anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or physical injury.

Defendant now contends that the failure to give this additional instruction constituted reversible error. We do not agree.

■ Essentially, defendant was asking the trial court to define the words "readily capable" to the jury. This term as used in the statute, and, in fact, as explained in defendant's proposed instruction, is no different from the term when used by laymen. We have stated that "words with common meaning need not be defined where the ordinary definition of the word and the statutory definition of the word are essentially the same." *State v. Barnett*, 142 Ariz. 592, 595, 691 P.2d 683, 686 (1984) citing *State v. Zaragoza*, 135 Ariz. 63, 659 P.2d 22 (1983). We find no error.

### IV.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next contends that he was denied his sixth amendment right to effective assistance of counsel. U.S.Const., amend. VI. He bases this claim on two points. First, he maintains that defense counsel should have allowed him to take

the stand in his own defense and second, he argues that counsel committed constitutional error by failing to request an intoxication instruction. We do not agree.

## 1. Failure to Testify

■ In order to succeed on a claim of ineffective assistance, defendant must satisfy a two-step test. First, he must show that counsel's performance fell below an objective standard of reasonableness as measured under prevailing professional norms. *State v. Nash,* 143 Ariz. 392, 397, 694 P.2d 222, 227 (1985). Second, he must demonstrate that counsel's performance prejudiced the defense. *State v. Lee,* 142 Ariz. 210, 214, 689 P.2d 153, 157 (1984). This second prong is satisfied when defendant offers evidence proving that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' A 'reasonable probability' is less than 'more likely than not' but more than a mere possibility." *Id.*

We have previously had occasion to consider whether a trial attorney's advice that a defendant not take the stand fell below the prevailing professional norms. In *State v. De Nistor,* we stated:

This court is reluctant to second guess actions taken by trial counsel that go to trial strategy. "We have always held that disagreements as to trial strategy * * * will not support an ineffectiveness claim as long as the challenged conduct could have some reasoned basis." We recognize that, normally, whether the defendant should testify is a decision that defendant should make. Defendant does not claim, however, that she wanted to testify and was prevented from doing so. It appears instead that she and her attorney agreed on this strategy of silence which she now claims was in error. We do not find that this choice was below objective standards of reasonableness. Defense counsel may have felt * * * that [defendant] would have harmed rather than helped her own defense by testify-

ing. Defense counsel's performance was reasonable under prevailing norms. 143 Ariz. 407, 415, 694 P.2d 237, 245 (1985) (citations omitted).

■ We have essentially the same situation in the instant case. Defendant does not claim that he asked to testify and was prevented. Rather, he claims that, because of his borderline intelligence, he did not understand what he was doing when he and his attorney adopted their trial strategy. Defendant was adjudged competent to assist in his own defense, however, and thus presumed capable of making the necessary decisions. We do not find that the decision that defendant and his attorney made not to testify fell below the prevailing standards.

■ Additionally, we note that, assuming this decision was in error, defendant was unable to show that this error prejudiced his defense. The case against defendant was strong and defendant does not claim that he would have testified to facts that had not been brought out previously by defense counsel. We find no error.

## 2. An Intoxication Instruction

Defendant next maintains that his attorney's incompetence was further demonstrated by his failure to request an intoxication instruction. Intoxication is a defense to those crimes committed with an "intentionally" *mens rea, see* A.R.S. § 13–503; *State v. Reffitt,* 145 Ariz. 452, 464, 702 P.2d 681, 693 (1985), in this case the attempted armed robbery and the resisting arrest charges.

■ We do not find, however, that defendant was entitled to such an instruction. A defendant is entitled to his requested instruction where his theory is *reasonably* supported by the evidence. *State v. Celaya,* 135 Ariz. 248, 253, 660 P.2d 849, 854 (1983) (emphasis supplied). Here, the evidence did not warrant such an instruction. Defense counsel asked three witnesses whether defendant appeared to be intoxicated. Gilmore stated that, although it was possible that defendant was drunk be-

cause of the violent way he was acting, he did not know whether defendant was intoxicated. The owner of the house that defendant broke into stated that she was not close enough to smell any alcohol on defendant's breath. Finally, the arresting officer stated that he could not detect any alcohol on defendant's breath. This evidence was hardly sufficient to support a theory that defendant was under the influence of alcohol when he committed the crimes. Thus, had defense counsel asked for an intoxication instruction, the trial court would have acted properly in refusing to give it. We cannot fault defense counsel for failing to make an essentially futile request. We find no error.

## V.

### REQUEST FOR A RULE 32 HEARING

After trial, defendant filed a petition for a post-conviction evidentiary hearing pursuant to Rule 32, Arizona Rules of Criminal Procedure, 17 A.R.S., alleging several defects in the trial. Defendant maintained that this hearing was necessary to provide our court with a more complete record on several issues, including the effectiveness of counsel's representation. The trial court denied this request. Defendant now contends that denying a hearing on the issue of effectiveness was in error and asks us to remand the case for such a proceeding. Rule 32.9(c).

Rule 32.1 permits a defendant to institute a proceeding if his "conviction or * * * sentence was in violation of the Constitution of the United States or of the State of Arizona." If a defendant did not receive adequate representation then his conviction would, of course, be in violation of both constitutions. Pursuant to Rule 32.6(c):

The court shall review the petition within 10 days after the petitioner's reply was due. If, upon reviewing the petition, response, reply, files and records, and disregarding defects of form, it determines that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceeding, it may order the petition dismissed * * *. Otherwise, the court shall direct that the proceeding continue and set a hearing within 10 days.

As the comment to that section explains: "[i]f the court finds from the pleadings and records that all of petitioner's claims are frivolous and that it would not be beneficial to continue the proceedings, it may dismiss the petition." Here, we find that the trial court acted properly in finding defendant's claim frivolous.

The gist of defendant's Rule 32 argument is that he informed his attorney that there were several witnesses who would testify that defendant had been walking home when he heard the arresting officer running behind him, and had run into a house where he knew that a man named Oscar Quintana lived. Despite this information and defendant's continued avowal of innocence, defendant alleges, defense counsel chose not to call these witnesses nor to allow defendant to take the stand. We do not find that these statements raise a colorable claim requiring an evidentiary hearing. First, defendant does not indicate the names of witnesses nor include affidavits containing what testimony they would have offered. *See, e.g., State v. Carriger,* 132 Ariz. 301, 645 P.2d 816 (1982). Rule 32 does not require the trial court to conduct evidentiary hearings based on mere generalizations and unsubstantiated claims that people exist who would give favorable testimony. Second, this allegation of the availability of exculpatory witnesses is somewhat unbelievable in light of the strong testimony of the arresting officer that he saw defendant commit the crime and never lost sight of him prior to the arrest. Lastly, in order to make a colorable claim of ineffective assistance, a defendant must raise some factors that demonstrate that the attorney's representation fell below the prevailing objective standards. As we noted, the fact that a defendant and his attorney decide that the defendant not testify is not ineffective per

se. Defendant does not allege any factors that would lead us to find that the decision not to testify was made improperly. He merely requests that we grant him a hearing so that trial counsel can fully explain why the decision was made. This reason is insufficient to raise a colorable claim.

Although defendant does not appeal the trial court's denial of an evidentiary hearing on the other issues raised in the Rule 32 petition, we have reviewed the record and find that the trial court acted properly in denying those requests. We find no error.

### THE CONSTITUTIONALITY OF A.R.S. § 13–604.01

Defendant next argues that A.R.S. § 13–604.01 as applied in this case violates the eighth amendment's prohibition against cruel and unusual punishment. U.S.Const. amend. VIII, XIV. Defendant recognizes that we have upheld the statute in *State v. McNair*, 141 Ariz. 475, 687 P.2d 1230 (1984) but argues that the instant case presents a different situation because the victim here was not hurt and the underlying felony was not a completed but only an attempted armed robbery. We do not find these differences to be dispositive.

In McNair, we used the four-part test enunciated in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) to determine whether the statute was constitutional. We considered: (1) the gravity of the offense, (2) the harshness of the penalty, (3) sentences imposed on similarly situated defendants in the same jurisdiction and (4) sentences imposed for the same or similar crimes in other jurisdictions. 141 Ariz. at 483, 687 P.2d at 1238. Defendant essentially argues that, under the first part of the test, the crime is less serious in the instant case because no one was hurt. We have previously rejected this argument.

In *State v. Noriega*, 142 Ariz. 474, 690 P.2d 775 (1984), the defendant threatened to use the handgun she was carrying but never did so. In upholding the constitutionality of the sentencing statute, we noted that the fact that no injury had occurred

did not make the crime any less serious or grave. We stated:

> As to the gravity of the offense, we find that appellant's crimes were very serious. It was fortunate that appellant and her accomplice did not observe White [the victim] during their armed burglary of the Laughlin residence, or he might not be alive today. Appellant's repeated threats against White with a handgun while fleeing the scene of the crime also indicate her willingness to resort to violence that could lead to serious injury or death. The absence of actual injury is scarcely an accurate measure of the danger appellant poses to society.

*Id.* at 487, 690 P.2d at 788. We find the same reasoning applicable here. Defendant acted in a violent and dangerous manner. Had he been able to break into the cashier's booth, he probably would have seriously harmed or possibly killed the attendant. We find that his actions were extremely dangerous and grave.

Defendant's second argument that a life sentence is not warranted because he was guilty of an attempted rather than a completed crime goes both to the harshness of the offense and whether his sentence is disproportionate to sentences imposed on defendants in this and other jurisdictions. We do not find a crime any less serious because it was not completed. Defendant acted in a dangerous and violent manner and it was only a fortuity that no one was seriously injured.

Nor do we find defendant's sentence disproportionate to other similarly situated defendants. It is worth noting that one of the purposes of the statute is to deter felons released from probation from committing violent and dangerous crimes. *State v. Noriega, supra,* at 487, 690 P.2d at 788. In other words, it is the violence that warrants harsh punishment. In Arizona, defendants on probation or parole committing equally violent crimes have received equally harsh sentences. *Id. See also State v. Garcia*, 141 Ariz. 97, 685 P.2d 734 (1984). Additionally, repeat offenders not on probation or parole committing a

class three felony such as attempted armed robbery are treated severely by our legislature. They may receive anywhere from ten to twenty years imprisonment. A.R.S. § 13–604. We do not find the punishment too harsh or disproportionate to other sentences in Arizona.

Attempted armed robbery is considered a serious crime, and punished accordingly, in other jurisdictions. For example, a first time conviction may result in six to thirty years in Arkansas (Ark.Stat.Ann. §§ 41–703, –901, –2102), two to twenty years in Alabama (Ala.Code §§ 13A–4–2, 13A–5–6, 13A–8–41), twenty-five years in Iowa (Iowa Code §§ 711.2, 813.1, 902.9), two and one-half to twenty-two and one-half years hard labor in Louisiana (La.Rev.Stat.Ann. §§ 14:27, 14:64) and twenty years in Maine (Me.Rev.Stat.Ann. tit. 17–A §§ 757, 1252). A repeat offender in Florida could receive a sentence of thirty years. (Fla.Stat.Ann. §§ 775.08, 777.04, 812.13). We find defendant's sentence is proportionate and, therefore, constitutional.

We have searched the record for fundamental error pursuant to A.R.S. § 13–4035, *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *State v. Leon,* 104 Ariz. 297, 451 P.2d 878 (1969), and find none. Defendant's convictions and sentences are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS, J., concur.

FELDMAN, Justice, specially concurring,

I agree with the reasoning of the court, except with respect to the portions of the opinion discussing the constitutionality of A.R.S. § 13–604.01. My views on that issue are set forth in my concurrence in *State v. McNair,* 141 Ariz. 475, 487, 687 P.2d 1230, 1242 (1984). Nevertheless, I concur in the result for the reasons set forth in *McNair.*