NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

DAVID THOMAS HARMON, *Petitioner*.

No. 1 CA-CR 15-0248 PRPC
FILED 7-13-2017

Petition for Review from the Superior Court in Maricopa County
No. CR2010-005952-001
The Honorable Dawn M. Bergin, Judge

**REVIEW GRANTED; RELIEF DENIED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Karen Kemper
*Counsel for Respondent*

David Thomas Harmon, Florence
*Petitioner*

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which
Presiding Judge Samuel A. Thumma and Judge James P. Beene joined.

**W I N T H R O P**, Judge:

¶1          David Thomas Harmon petitions this court for review of the summary dismissal of his first petition for post-conviction relief.  A jury found Harmon guilty of kidnapping, burglary in the second degree, attempt to commit kidnapping, and attempt to commit burglary in the second degree.  Harmon committed the counts of kidnapping and burglary against "Victim 1" in November 2009, and the counts of attempted kidnapping and attempted burglary against "Victim 2" in January 2010. The trial court sentenced Harmon to an aggregate term of sixty years' imprisonment, and this court affirmed his convictions and sentences on direct appeal.

        I.        *Newly Discovered Evidence*

¶2          In his petition for review, Harmon presents two claims of newly discovered evidence.  First, he argues he has newly discovered evidence of alibi witnesses who can provide evidence that he was in Mexico at the time of the offenses committed against Victim 1.  Second, he argues he has newly discovered evidence from two of his treating physicians that tends to prove he did not have the physical capacity to engage in the conduct the victims described due to a prior knee injury and subsequent medical treatment to that knee.

¶3          We deny relief on the claims of newly discovered evidence. Regarding the alibi witnesses, Harmon provided only unsworn statements from those witnesses.  To present a colorable claim of newly discovered evidence based on the discovery of a witness, a defendant must provide a sworn affidavit from that witness explaining what testimony the witness could have offered.  *See State v. Borbon*, 146 Ariz. 392, 399, 706 P.2d 718, 725 (1985).  Because Harmon failed to present any affidavits, he failed to present a colorable claim for relief.  We also deny relief because the witnesses are not "newly discovered."  "Newly-discovered material facts alleged as grounds for post-conviction relief are facts which come to light *after the trial and which could not have been discovered and produced at trial through reasonable diligence.*"  *State v. Dogan*, 150 Ariz. 595, 600, 724 P.2d 1264, 1269 (App. 1986) (emphasis added).  If Harmon was in Mexico at the relevant time, Harmon knew where he was and who he was with while there.  More importantly, Harmon admitted in his petition for post-conviction relief that the identities of at least three of these witnesses were known before trial.

¶4          We also deny relief on the claim regarding the purportedly new medical evidence because this also is not "newly discovered."  Harmon

knew he injured his knee years before the incidents at issue. He was also aware of all the medical treatment he underwent since the initial injury. Further, as noted by the trial court, none of the medical records Harmon provided to the court are from the time when Harmon committed the offenses. The reports from Drs. Grant and Stanton that Harmon primarily relies upon are from years after the incidents and are simply records of the most recent diagnosis and treatment of a progressive condition Harmon has had for years.

## II. *The Failure to Disclose Evidence*

**¶5** In his petition for review, Harmon presents several claims in which he argues the State failed to disclose evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963). Harmon argues the State failed to disclose the January 2, 2010 report of Officer Broadhurst; the January 2, 2010 report of Officer Hurley; a written statement of facts Victim 2 prepared for investigators; and a digitally altered copy of the first photographic lineup investigators prepared for Victim 1, as well as a "true" unaltered copy of the photographic lineup. Harmon argues all of this evidence was exculpatory.

**¶6** The State must disclose evidence material to either guilt or punishment. *Id.* at 87. *Brady* applies only to evidence favorable to the defendant, however. *State v. Montaño*, 204 Ariz. 413, 424, ¶ 52, 65 P.3d 61, 72 (2003) (citation omitted). Further, undisclosed evidence is material for *Brady* purposes only if there is a reasonable probability that disclosure of the evidence would have changed the result of the proceedings. *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citation omitted). "[T]here is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id.* at 281.

**¶7** We deny relief on all of Harmon's *Brady* claims. Harmon argues the State failed to disclose these materials *to the attorney who ultimately represented him at trial*. Harmon conceded below that the State disclosed Officer Broadhurst's police report to one or more of the attorneys who represented him at various times before trial, and that he found that report in one or more of those other attorneys' files when he obtained copies of those files. Similarly, although he claimed without evidentiary support that the State suppressed the report of Officer Hurley and the "statement" of Victim 2, he acknowledges in his petition for review that he obtained these documents from his previous attorneys. There is no requirement that the State duplicate its disclosures to every new attorney who substitutes in

to represent a criminal defendant. That Harmon may not have found those materials in the file of the attorney who ultimately represented him at trial is immaterial. Regarding a digitally altered copy of the photographic lineup and/or an unaltered copy of the lineup, we deny relief because Harmon conceded below that the State disclosed a copy of the photographic lineup at issue and he only speculates that other versions of that lineup might exist. Harmon's speculative theories regarding why other copies might exist are not sufficient to present a colorable claim for relief.

### III.     Ineffective Assistance of Counsel

¶8          Harmon next presents numerous claims of ineffective assistance of counsel. To state a colorable claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below objectively reasonable standards and that the deficient performance resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), *superseded by statute on other grounds*, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996); *State v. Nash*, 143 Ariz. 392, 397-98, 694 P.2d 222, 227-28 (1985) (adopting the *Strickland* test).

¶9          Harmon argues his counsel was ineffective when counsel failed to present evidence that investigating officers engaged in "bias[ed] communication" when they conducted the first photographic lineup with Victim 1. Harmon conceded below that an officer told the victim her assailant may not appear in the lineup. He argues, however, that Victim 1's trial testimony suggests she must have believed her assailant appeared in one of the photographs, ostensibly because an officer told her or otherwise suggested this to her. We deny relief on this issue. First, Victim 1 tentatively identified someone other than Harmon when she viewed the first photographic lineup. Second, Harmon's speculation about what the victim may have believed and why is not sufficient to present a colorable claim of ineffective assistance of counsel.

¶10         Harmon next argues his counsel was ineffective when counsel failed to impeach the "falsified" police report of Detective Wiltrout. We deny relief because Harmon offers nothing but speculation the report was "falsified" and/or that any other versions of the report existed. Harmon's interpretation of what he believes to be date and time information that indicates the short amount of time it took the detective to prepare the report is insufficient to present a colorable claim that the report or the information within it was "falsified," that another version of the report must exist

somewhere, or that counsel should have attempted to attack the report on those grounds.

¶11 Harmon also argues his counsel was ineffective when counsel failed to contest Victim 1's identification of Harmon's voice in an audio recording made by police. Harmon argues counsel should have argued Victim 1's identification was "inconsistent" because she claimed Harmon was yelling in the recording when, in his view, he was not. We deny relief on this issue because Harmon's counsel cross-examined the victim regarding her identification of Harmon's voice. How to cross-examine a witness is a matter of trial strategy. *See State v. Stone*, 151 Ariz. 455, 461, 728 P.2d 674, 680 (App. 1986). "[D]eterminations of trial strategy, even if later proven unsuccessful, are not ineffective assistance of counsel." *State v. Valdez*, 160 Ariz. 9, 14-15, 770 P.2d 313, 318-19 (1989) (citations omitted), *departed from on other grounds by Krone v. Hotham*, 181 Ariz. 364, 366-67, 890 P.2d 1149, 1151-52 (1995). Further, Victim 1 did not testify that Harmon "yelled" on the recording. Victim 1 testified that Harmon yelled at her during the incident, and that she recognized Harmon's voice on the recording as he became agitated and raised his voice.

¶12 Harmon next argues his counsel was ineffective when he failed to obtain an "original" copy of the first photographic lineup investigators showed to Victim 1. We deny relief on this issue because, as explained above, Harmon does not know if any other copy of the lineup exists besides the one the State disclosed.

¶13 Harmon also argues his counsel should have called the witnesses from Mexico to testify at trial. For the reasons explained above, Harmon's failure to present affidavits from those witnesses is fatal to his claim of ineffective assistance of counsel. Harmon further argues his counsel should have obtained a written copy of Victim 1's deposition to use to impeach her during trial. We deny relief on this issue as well because this was a matter of trial strategy. Harmon conceded below that his counsel explained to the court that he did not need a written copy of the deposition.

¶14 Additionally, Harmon argues his counsel was ineffective when counsel failed to retain orthopedic experts to explain how Harmon did not have the physical capacity to engage in the conduct the victims described and when counsel failed to obtain an expert on identification procedures. We deny relief because Harmon failed to provide affidavits from any expert witness regarding what testimony that witness could have provided. *See Borbon*, 146 Ariz. at 399, 706 P.2d at 725. He has, therefore, failed to present a colorable claim for relief.

**¶15**         Harmon further argues his counsel was ineffective when counsel failed to seek a hearing pursuant to *State v. Dessureault*, 104 Ariz. 380, 384, 453 P.2d 951, 955 (1969), to challenge the reliability of Victim 2's identification of Harmon.  Harmon has failed to present a colorable claim for relief because he makes only a cursory argument that the lineup procedures were suggestive and offers no evidence or substantive argument to support his claim.

**¶16**         Harmon also contends counsel was ineffective when counsel failed to adequately cross-examine Victim 1 regarding her ability to identify Harmon, failed to adequately cross-examine Detective Redden regarding statements he made to the grand jury, and failed to adequately cross-examine Detective Wiltrout regarding Victim 1's identification of Harmon. In his petition for post-conviction relief, Harmon offered detailed outlines of how he believes counsel should have cross-examined these witnesses. We deny relief because, again, how to cross-examine a witness is a matter of trial strategy.  *See Stone*, 151 Ariz. at 461, 728 P.2d at 680.

**¶17**         Finally, to the extent Harmon's petition for review may be construed as preserving other arguments he raised in his petition for post-conviction relief and that were addressed by the trial court, we note the trial court set forth its dismissal of Harmon's petition in a thorough, well-reasoned manner that will allow any future court to understand the court's rulings.  Under these circumstances, no useful purpose would be served by this court rehashing the trial court's additional analyses.  *State v. Whipple*, 177 Ariz. 272, 274, 866 P.2d 1358, 1360 (App. 1993).  We therefore adopt the trial court's additional rulings.

**¶18**         Accordingly, although we grant review, we deny relief.



AMY M. WOOD • Clerk of the Court
FILED:  AA