692 P.2d 272

**STATE of Arizona, Appellee,**

v.

**Gentry G. NEAL, Appellant.**

**No. 5893.**

Supreme Court of Arizona,
En Banc.

Dec. 4, 1984.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Diane M. Ramsey and Stanley L. Patchell, Asst. Attys. Gen., Phoenix, for appellee.

Wallace R. Hoggatt, Tucson, for appellant.

HAYS, Justice.

Appellant, Gentry Garnett Neal, was tried by a jury and convicted of first degree murder. A.R.S. § 13–1105. Pursuant to A.R.S. § 13–703, Neal was sentenced to life imprisonment without the possibility of parole for twenty-five years. We have jurisdiction pursuant to Ariz.Const. art. 6, § 5(3) and A.R.S. §§ 13–4031 and 13–4035.

The issues we must decide on appeal are:

I. Did the trial court err when it denied defendant's motion for a new trial?

II. Did the trial court err when it refused to grant the defendant's Rule 20 motion?

III. Did the trial court fundamentally err in instructing the jury?

IV. Did the trial court err in admitting the testimony of Dr. Hinton, a psychologist for the Pima County Court Clinic?

V. Did the trial court err in refusing to allow the defendant to present evidence of drugs in the victim's bloodstream?

VI. Was the defendant denied effective assistance of counsel?

The facts necessary for a determination of these issues are as follows. On August 9, 1982 Neal, his girlfriend, Mary Carter, her son Chad, aged 11, and a friend, Jan Jordan, drove to Mount Lemmon, just outside of Tucson. While on Mt. Lemmon, Neal and his girlfriend took some quaaludes, and all the adults drank beer. Toward the end of the day the group drove up to the small Mt. Lemmon town of Summerhaven. There they met two friends in a bar and drank more liquor. At the bar, Neal became angry because he thought Mary was flirting with other men. On the way down the mountain the atmosphere in Neal's vehicle was tense. Neal accused the others of dirtying his truck by the sloppy way in which they were eating their supper. Angered by something that Mary said, Neal grabbed her by the throat and threw her head against the back window of the pickup. At one point Neal stopped the truck, took the keys from the ignition and walked away. He told the others he wanted to "cool down."

When Neal, Mary and Chad returned to Mary's apartment, Chad overheard the two adults mumbling in Mary's bedroom. Chad saw Neal come into the kitchen. He testified that Neal appeared angry, rummaged around in the silverware drawer, hid something by his left leg, and walked back into the bedroom. Within a minute or two, Neal came back out of Mary's bedroom, still appeared angry, slammed the back kitchen door, and sped away in his truck.

Chad found his mother in her bedroom, stabbed in the back with a butcher knife. The knife was from a set owned by Mary Carter. (It was thrust through her body from the back, with the front tip protruding from her chest.) It appeared she may have been lying on her stomach when she was stabbed, because the knife also cut into her waterbed.

A short time later, Neal turned himself in at a Tucson police station. Agitated and crying, he told the police, "I did it. Take me." At trial he did not dispute killing Mary Carter. Rather, he claimed he was temporarily insane and thus was not responsible for his actions.

## I. DID THE TRIAL COURT ERR WHEN IT DENIED DEFENDANT'S MOTION FOR NEW TRIAL?

A. The Rule 24.1(c)(1) motion.

After the guilty verdict was returned, Neal moved for a new trial on the ground that the verdict was contrary to the weight

of the evidence. 17 A.R.S. Arizona Rules of Criminal Procedure, rule 24.1(c)(1) (verdict contrary to the weight of the evidence). Neal claims that the trial court improperly denied his motion because it used the wrong standard of review. In support of this proposition, Neal cites to the trial court's language denying the ruling:

With respect to the motion for new trial, I think basically all the points that you have raised in the motion, Mr. Grills [Neal's attorney] have been raised and considered previously, [as Rule 20 motions] . . . .

Appellant alleges that the trial court's denial of the new trial motion was based on the substantial evidence test of Rule 20, rather than the weight of the evidence test of Rule 24.1(c)(1). *See* 17 A.R.S. Arizona Rules of Criminal Procedure, rule 20 (judgment of acquittal).

■ We believe that there was no confusion as to the standard of review because a few pages further in the transcript the trial court explicitly distinguished between and denied both of appellant's motions. The trial judge said, "So I'm going to deny the motion for a new trial and I'm going to deny the motion for judgment of acquittal." The trial court neither confused these two motions nor incorrectly applied the standard of review.

B. Did the Trial Court Abuse its Discretion When it Denied Appellant's Motion for a New Trial?

Appellant next contends that, even if the proper standard of review was applied, the trial court abused its discretion by denying his motion for a new trial because the verdict was contrary to the weight of the evidence. 17 A.R.S. Arizona Rules of Criminal Procedure, rule 24.1(c)(1). In particular, appellant urges that the evidence does not support a finding of premeditated murder.

■ Motions for new trial are not looked upon with favor. *State v. Schantz*, 102 Ariz. 212, 214, 427 P.2d 530, 532 (1967). Absent an abuse of discretion, we will not disturb the trial court's ruling. *State v.*

*Fisher*, 141 Ariz. 227, 251, 686 P.2d 750, 774 (1984). The operative question becomes whether there was an abuse of discretion.

■ In this context, there was an abuse of discretion warranting a new trial only if the evidence was not sufficient to allow the jury to find beyond a reasonable doubt that Neal premeditated Mary Carter's murder. *State v. Moya*, 129 Ariz. 64, 66, 628 P.2d 947, 949 (1981). We review the record with this standard in mind. *State v. Moya, id.*

■ In order to show premeditation, the state must prove Neal acted with either the intent or knowledge that he would kill Mary Carter and that such intent or knowledge preceded the killing by a length of time to permit reflection. A.R.S. § 13–1101(1). This length of time could have been as instantaneous as it takes to form successive thoughts in the mind, and premeditation may be proven by circumstantial evidence. *State v. Lacquey*, 117 Ariz. 231, 234, 571 P.2d 1027, 1030 (1977).

■ Appellant contends that psychiatric testimony establishes his lack of premeditation. At trial Neal testified he could not remember any of the events of the killing. Both psychiatrists agreed that Neal neither knew right from wrong nor knew the nature and quality of his acts at the time of the murder. Both stated, however, that their diagnoses were based on the assumption that Neal told them the truth during examination. If Neal lied to them, their opinions would be unreliable. Clearly, the evaluation of Neal's truthfulness was for the jury to decide. Similarly, the credibility of the experts and the weight to be given their testimony was also a jury question. *See State v. Ganster*, 102 Ariz. 490, 493, 433 P.2d 620, 623 (1967).

The defense psychiatrist, Dr. Gurland, testified that Neal's memory loss indicated a disassociative state. According to Dr. Gurland, Neal was insane at the time of the murder. The state's psychiatrist, Dr. Biegal, testified differently. He stated that Neal's violent behavior stemmed from a

rage reaction "... which was partially a consequence of his state of intoxication and his using drugs on the date in question, and that it was as a result of loss of control of his impulses secondary to this intoxication that the offense itself occurred." Biegal also testified that if Neal did not know right from wrong, or the nature and consequences of his actions, it was because of his intoxication.

■■■■ It is clear from the verdict that the jury did not believe the defendant's psychiatrist. Had they believed him, they would have been obliged to acquit the defendant by reason of insanity. *See* A.R.S. § 13–502. The jury may have believed the state's psychiatrist. If the jury believed Neal's voluntary intoxication caused the murder, they could have still found him guilty of first degree murder. This is because first degree murder requires an "intentional" or "knowing" *mens rea* on the part of the assailant and voluntary intoxication only negates the "intentional" *mens rea*. *See* A.R.S. §§ 13–1101(1), 13–1105(A)(1) and 13–503. Thus, even assuming Neal was intoxicated and the jury believed Dr. Biegal's testimony, the jury could still properly convict him of first degree murder if they believed he "knowingly" caused the victim's death. *See* A.R.S. § 13–503.

The third expert, Dr. Hinton, testified that Neal was able to distinguish right from wrong and understand the nature and quality of his acts at the time of the murder. He testified that memory loss among people who drink alcohol and take barbiturates is not uncommon.

Aside from this evidence, there was other evidence to indicate premeditation. Before the murder, the couple had been quarreling. Neal was jealous because he thought Mary had been flirting with other men. On the way down the mountain, Neal grabbed Mary's throat so powerfully that later photographs show bruises. While driving, Neal felt the need to pull off the road to "cool down." Upon returning to Mary's house, he went into the kitchen and selected a knife. On the way back to the bedroom, he hid the knife so Mary's

son could not see it. He stabbed Mary in the back. Mary's son Chad testified that Neal appeared angry when he first went into the kitchen and after he left Mary's bedroom. At the police station, Neal told officers, "I did it. Take me."

■■■■ The trial judge did not act capriciously in refusing to grant appellant's motion for a new trial. There was sufficient evidence for the jury to find beyond a reasonable doubt that Neal premeditated Mary Carter's murder.

## II. DID THE TRIAL COURT ERR WHEN IT REFUSED TO GRANT THE DEFENDANT'S RULE 20 MOTION?

At the conclusion of the state's case and again at the end of the trial, Neal moved for a judgment of acquittal. 17 A.R.S. Arizona Rules of Criminal Procedure, rule 20. He argued that there was insufficient evidence of guilt to submit his case to the jury. Both times it was denied. Neal now argues that the denial of these motions was an abuse of discretion.

■■■■ A Rule 20 motion is designed to test the sufficiency of the state's evidence. If no substantial evidence exists that the defendant committed the crime, then the trial judge must enter a judgment of acquittal. *State v. Axley*, 132 Ariz. 383, 393, 646 P.2d 268, 278 (1982). In reviewing the denial of a Rule 20 motion, the appellate court must view the evidence in favor of upholding the jury's verdict. *State v. Gillies*, 135 Ariz. 500, 506, 662 P.2d 1007, 1013 (1983). As we noted during discussion of defendant's Rule 24.1(c)1 motion, substantial evidence existed to support both the submission of the case to the jury and the verdict.

## III. DID THE TRIAL COURT FUNDAMENTALLY ERR IN INSTRUCTING THE JURY?

A. Was the Trial Court's Second Degree Murder Instruction One Which Shifted the Burden of Proof to Appellant?

Appellant alleges that the jury instruction concerning second degree murder im-

properly shifted the burden of proof to him, so that he was required to prove absence of premeditation. The instruction read:

> The crime of first degree murder includes the less serious crime of second degree murder. If you do not find beyond a reasonable doubt that the defendant is guilty of first degree murder, you may consider whether or not the defendant is guilty of second degree murder.
>
> The crime of second degree murder *requires proof that, without premeditation:* First, the defendant intentionally caused the death of another .... (emphasis added).

Appellant points to this language and argues that it requires him to prove absence of premeditation. We disagree.

The series of instructions on homicide initially set out Arizona's law on first degree murder. In this context, the contested language in the second degree murder instruction merely pointed out that second degree murder does not require premeditation.

■ If there was any doubt about where the burden of proof lay, it was put to rest by the trial judge's other instructions. Among the other instructions were the following:

> You must take into account, all my instructions on the law.... In other words, you are not to pick out one instruction or part of one and disregard the others....
>
> The law does not require a person to prove that he or she is innocent. The person is presumed by law to be innocent. This means that the state must prove *all* of its case against the person (emphasis added).

We hold that the trial court did not commit fundamental error when it gave the instruction on second degree murder.

**B. Did the Trial Court Fail to Instruct on Negligent Homicide?**

Appellant claims that the trial judge should have instructed the jury *sua sponte* on negligent homicide as a lesser included offense of first degree murder. At trial appellant did not request this instruction. He now assigns error.

■ In potential death penalty cases, we require the trial judge to instruct the jury on all the lesser included offenses of homicide that are supported by the evidence. *State v. Vickers,* 129 Ariz. 506, 513, 633 P.2d 315, 321–22 (1981); *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

The trial judge instructed the jury on first degree murder, A.R.S. § 13–1105, second degree murder, A.R.S. § 13–1104, and manslaughter, A.R.S. § 13–1103. Appellant argues that the testimony of defense psychiatrist, Dr. Gurland, established evidence that would have allowed the jury to find Neal guilty of negligent homicide. A.R.S. § 13–1102. Thus, Neal maintains that it was error for the trial judge not to instruct *sua sponte* on this offense. We disagree.

Negligent homicide is established when a person fails to perceive the substantial and unjustifiable risk that his or her conduct will cause the death of another. A reasonable person would have perceived and avoided this risk. A.R.S. §§ 13–1102 and 13–105(5)(d).

■ At trial Dr. Gurland testified that Neal was insane; he neither knew the nature and quality of his acts nor could distinguish right from wrong at the time of the murder. Had the jury believed Dr. Gurland, they would have acquitted Neal. Dr. Gurland's testimony did not provide a basis for the trial judge to instruct on negligent homicide.

**IV. DID THE TRIAL COURT ERR IN ADMITTING THE TESTIMONY OF DR. HINTON?**

Appellant objects to the admission of the testimony of Dr. Hinton. Dr. Hinton is a psychologist who works for the Pima County Court Clinic. He examined Neal pursuant to an uncodified, local Pima County practice which requires defendants who seek Rule 11 appointments to submit to a pre-Rule 11 screening. 17 A.R.S. Arizona Rules of Criminal Procedure, rule 11 (in-

competency and mental examinations). Ostensibly, the Pima County Superior Court requires this pre-Rule 11 screening to aid the trial court in determining whether "reasonable grounds for an examination exist." 17 A.R.S. Arizona Rules of Criminal Procedure, rule 11.3; *cf. State v. Lane,* 128 Ariz. 360, 361, 625 P.2d 949, 950 (App.1981).

One day prior to trial, when Neal's attorney discovered that the state desired Hinton's testimony, he objected to its admission. The trial court ruled that he had waived his objection because of its untimeliness. Without expressing opinion as to the validity of Pima County's local, uncodified practice, we believe the defendant waived this error and Hinton's testimony therefore was admissible.

On August 12, 1982 Neal's attorney secured Dr. Gurland to examine his client. It was Dr. Gurland's opinion that Neal was competent to stand trial, but insane at the time of the murder. On September 27, 1982 appellant moved for a Rule 11 examination. In his motion, appellant asked that he be examined both as to competency and as to mental state at the time of the crime. 17 A.R.S. Arizona Rules of Criminal Procedure, rule 11.3(e)(3). Pursuant to the local practice, the trial judge ordered a pre-Rule 11 screening. Had the appellant disagreed with this procedure, he could have objected at this point.

Appellant objected at trial to the admission of Hinton's testimony because this procedure afforded the state two experts while he had only one. Prior to trial, but after Hinton's initial unfavorable report, the following conversation took place between defendant's attorney and the court:

MR. GRILLS: Your Honor, I'm going to want the Court to consider a report by Doctor Gurland in this matter, which disagrees with Doctor Hinton as far as the Rule 11.

THE COURT: Do you have the report available?

MR. GRILLS: Yes, I do, Your Honor.

THE COURT: How was that done?

MR. GRILLS: It was done by a visit arranged through my office to the county jail with Doctor Gurland.

THE COURT: Have you talked to the prosecutor about this additional report?

MR. GRILLS: No, I haven't. I[t] wasn't available at our last conversation.

THE COURT: Let me see what it has to say.

MR. GRILLS: Second page primarily deals with the issue.

THE COURT: Do you need anyone other than Doctor Gurland other than for your purpose on the Rule 11?

MR. GRILLS: No, Your Honor.

THE COURT: If I grant a Rule 11 all I would [do] is appoint an additional doctor for the prosecution; is that what you would contemplate?

MR. GRILLS: Yes, Your Honor.

■■■ It is clear from this conversation that Grills knew Dr. Hinton's evaluation was unfavorable but did not object. The trial court specifically asked Grills if he understood that he would only have Dr. Gurland as his expert. Thus, admission of Dr. Hinton's testimony over Grills' objection, one day before trial, was not an abuse of discretion. "It is within the trial court's discretion to permit expert testimony, and this discretion will not be disturbed unless the discretion was abused." *State v. Williams,* 132 Ariz. 153, 160, 644 P.2d 889, 896 (1982).

■ On appeal, Neal objects to the admission of Hinton's testimony on different grounds than were raised below. Now according to appellant, Neal's conversations with Dr. Hinton were privileged. Absent fundamental error, if evidence is objected to on one ground in the trial court and admitted over that objection, other grounds raised for the first time on appeal are waived. *State v. Zuck,* 134 Ariz. 509, 513, 658 P.2d 162, 166 (1982). There was no fundamental error.

V. DID THE TRIAL COURT ERR IN REFUSING TO ALLOW THE DEFENDANT TO PRESENT EVIDENCE OF DRUGS IN THE VICTIM'S BLOODSTREAM?

Appellant argues that the trial court erred when it denied him an opportunity to

present to the jury the victim's blood level for cocaine and quaaludes. Appellant urges that this evidence would have allowed him to show that the victim was "hyped up" and provoked Neal; she then quickly lost consciousness and was therefore face down on the bed when stabbed.

The jury was informed about Mary Carter's blood-alcohol level and that she took some quaaludes on the day of her murder. As to her blood level for cocaine and methaqualone, and their potential interaction with alcohol, the trial judge ruled that the probative value was so slight that it was outweighed by the dangers of prejudice and confusion. 17A A.R.S. Arizona Rules of Evidence, rule 403. This determination was within the trial court's sound discretion. *See State v. Smith*, 136 Ariz. 273, 276, 665 P.2d 995, 998 (1983).

## VI. WAS THE DEFENDANT DENIED EFFECTIVE ASSISTANCE OF COUNSEL?

Neal argues that he was denied effective assistance of counsel. He points to three separate instances of ineffective assistance.

First, he contends that his trial counsel did not adequately prepare Dr. Gurland for trial. Prior to testifying he was not given police reports or witnesses' statements concerning the murder.

Second, he contends that his counsel did not object to a misleading instruction on second degree murder. We flatly reject this contention because we find the instruction not to be misleading.

Third and lastly, Neal contends that his counsel failed to object to improper evidence of Neal's prior bad acts. Neal's ex-wife testified that Neal had hurt her arm during a quarrel while they were married. But prior bad acts are admissible when sanity is in issue. *State v. Rodriguez*, 126 Ariz. 28, 31, 612 P.2d 484, 487 (1980).

In *State v. Lee*, 142 Ariz. 210, 214, 689 P.2d 153, 157 (1984), we set forth

the standard by which claims of ineffective assistance of counsel are measured. The defendant must show two things: first, that his attorney lacked minimal competence; second, there is a reasonable probability, that but for this incompetence, the result probably would have been different. The prior standard, in effect at the time of Neal's trial, only required the defendant to prove the first prong of this two-part test. *State v. Watson*, 134 Ariz. 1, 653 P.2d 351 (1982). Under either of these two standards Neal was not denied effective assistance of counsel. Neal's attorney made pretrial motions, called witnesses in the defendant's behalf, and adequately cross-examined the state's witnesses. Neal's representation did not reach the level where he was denied effective assistance of counsel.

We have reviewed the record for fundamental error pursuant to A.R.S. § 13–4035 and have found none. Accordingly, we affirm the judgment of conviction and the sentence.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.