NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

SHERRY LYNETTE WASHINGTON, *Appellant*.

No. 1 CA-CR 14-0808
No. 1 CA-CR 15-0730
(CONSOLIDATED)
FILED 4-11-2017

---

Appeal from the Superior Court in Maricopa County
No.  CR2011-008033-001
CR2011-123789-008
The Honorable Sherry K. Stephens, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist, III
*Counsel for Appellee*

DeBrigida Law Offices, PLLC, Glendale
By Ronald M. DeBrigida, Jr.
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Patricia K. Norris joined.

**M c M U R D I E**, Judge:

¶1 Sherry Lynette Washington ("Washington") appeals her convictions and sentences in CR2011-123789-008 and CR2011-008033-001 for illegal control of an enterprise, conspiracy to commit sale or transportation of marijuana, fraudulent schemes and artifices, conspiracy to commit money laundering in the second degree, money laundering in the second degree, and fraudulent schemes and artifices.[1] Washington argues the State failed to disclose information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and challenges the sufficiency of evidence supporting her convictions. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2 After police conducted a four-month long wiretap investigation into a nationwide drug trafficking organization ("DTO"), the State charged Washington and 28 others, both directly and as accomplices, with various criminal offenses associated with their alleged participation in utilizing a private delivery service to send large amounts of marijuana and cash to and from Maricopa County. Specifically, Washington faced one count each of illegal control of an enterprise, a class 3 felony; conspiracy to commit sale or transportation of marijuana, a class 2 felony; conspiracy to commit money laundering, a class 3 felony; forgery, a class 4 felony; and three counts each of second degree money laundering, class 3 felonies; and fraudulent schemes and artifices, class 2 felonies. Washington and three of her co-defendants proceeded to a 36-day dual jury trial, which included six days of deliberations. At trial, the State dismissed the forgery count, two counts of fraudulent schemes and artifices, and two counts of second degree money laundering.

¶3 The jury that considered Washington's case found her guilty of the remaining five counts as charged. Washington unsuccessfully moved for a new trial, arguing the court had erred in denying her motion for

---

[1] The superior court consolidated the cases for trial.

judgment of acquittal made pursuant to Arizona Rule of Criminal Procedure 20. The court imposed concurrent prison terms for four of the convictions, the longest of which was four-and-a-half years. For the remaining conviction, the court ordered a two-year term of probation commencing upon Washington's release. Washington was credited 123 days' presentence incarceration. Washington timely appealed her convictions and sentences.

¶4        Thereafter, Washington successfully requested this court stay her appeal, and she moved in superior court to join a co-defendant's motion for new trial, which argued the State violated its disclosure obligations by failing to disclose an email the prosecutor had sent to counsel for Warren Braithwaite, another co-defendant, who had received a plea offer in exchange for his testimony at trial. The court allowed Washington to join in the motion, but denied the new trial motion after conducting an evidentiary hearing. The court subsequently granted Washington post-conviction relief to file a delayed notice of appeal from the denial of the second motion for new trial. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).[2]

## DISCUSSION

### A.    Sufficiency of Evidence.

¶5        Washington contends the trial court erred by denying her Rule 20 motion, and her motion for a new trial, *see* Ariz. R. Crim. P. 24.1, both based upon the same claim of insufficient evidence. We need not address Washington's claim in multiple contexts. *See State v. Neal*, 143 Ariz. 93, 98 (1984) ("A Rule 20 motion is designed to test the sufficiency of the state's evidence."); *State v. Mincey*, 141 Ariz. 425, 432–33 (1984) (noting similarity of Rule 20 and Rule 24.1 standards and deciding issues regarding sufficiency and weight of evidence without separate analyses); *State v. Davis*, 226 Ariz. 97, 99, ¶ 7 (App. 2010) (holding no error in denying motion for new trial based on claim that verdict was against "the weight of the evidence" where State presented evidence sufficient to support a verdict of guilt).

¶6        We review a claim of insufficient evidence *de novo*. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). Our review of the sufficiency of

---

[2]        Absent material revision after the date of an alleged offense, we cite a statute's or rule's current version.

evidence is limited to whether substantial evidence exists to support the verdicts. *State v. Scott*, 177 Ariz. 131, 138 (1993); *see also* Ariz. R. Crim. P. 20(a) (directing courts to enter judgment of acquittal "if there is no substantial evidence to warrant a conviction."). Substantial evidence is such proof "reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Mathers*, 165 Ariz. 64, 67 (1990) (quoting *State v. Jones*, 125 Ariz. 417, 419 (1980)).

¶7        Washington does not assert the State failed to prove any specific elements of the offenses for which she was convicted; rather, she generally contends, "There is simply no evidence, let alone sufficient evidence to support the guilty verdicts in this case."   Specifically, Washington argues:

> There was no direct evidence of any possible involvement on the part of Washington *but for the testimony of Braithwaite*. There was no corroboration, either by other testimony or by physical evidence, of his testimony. As trial counsel pointed out on more than one occasion during this litigation, there was no evidence whatsoever that Washington ever even met a UPS driver or send or receive [sic] any UPS packages. Washington is alleged to have engaged in various activities in support the trafficking activity [sic], however, *other than the testimony of Warren Braithwaite, whose testimony is incredible and not believable,* there was no evidence presented that Washington intentionally or knowingly acted with any type of criminal intent.

(emphasis added).

¶8        Although Washington argues "no evidence" supports the verdicts, she concedes that Brathwaite testified about her involvement in the DTO. "The strength or weakness of testimony is not measured by the number of witnesses; one witness, if relevant and credible, is sufficient to support a conviction." *State v. Montano*, 121 Ariz. 147, 149 (App. 1978); *see* A.R.S. § 13-302 ("In any prosecution, testimony of an accomplice need not be corroborated."). Washington's assertion that Brathwaite's testimony was "incredible and not believable" does not persuade us otherwise. This court does not determine issues of credibility, nor do we weigh the evidence; those assessments are solely within the province of the jury. *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996). In rendering their verdicts, the jurors apparently found Brathwaite's testimony credible. By denying

Washington's motion for new trial on the purported basis that the verdicts were contrary to the evidence, the superior court also determined Braithwaite's testimony was credible. *See State v. Fischer*, 238 Ariz. 309, 313–14, ¶ 18 (App. 2015) (unlike in a Rule 20 motion ruling, "a [superior] court is permitted to make credibility determinations and weigh the evidence" when disposing of a post-verdict motion for new trial based on the weight of the evidence).

**¶9** Accordingly, we reject Washington's challenge to the sufficiency of evidence. The court did not abuse its discretion by denying Washington's motion for new trial. *See Neal*, 143 Ariz. at 97 (rulings on a motion for new trial are reviewed for abuse of discretion).

**B.** *Brady* **Violation.**

**¶10** Before trial, the prosecutor offered Braithwaite a five-year prison term in exchange for Braithwaite's testimony and cooperation with the State in this case. Braithwaite's attorney responded that, should his client not receive a sentence of time served, Braithwaite was afraid he would be deported to his birth country where he would face retaliation by the co-defendants' associates. The prosecutor replied by email as follows:

> Whether or not he can get an ICE hold lifted is of no consequence to me, although I certainly understand why it matters to Mr. Braithwaite. What I have told him all along is that I will treat him in good faith. So although the plea deal I'm willing to offer today will only go as low as the 5 years I sent you, *if during the course of the testimonial process I believe Mr. Braithwaite has exceeded the 5 year agreement in value to the State, I will lower the deal accordingly.* That would only be fair and that's what I would do.

> Mr. Braithwaite has had a mixed start to the process. During the interview he began by lying. That was a disappointing start. He has since, however, been honest not only about the facts of this prosecution but also on other issues of law enforcement interest. And I hope that this period of significant and fruitful cooperation will continue.

> For many reasons I'm unwilling/unable to go lower than 5 years. I promise that I will always operate in good faith with Mr. Braithwaite, but I cannot make any specific promise about the outcome. Mr. Braithwaite holds that in his hands.

Please let me know your response.

Braithwaite eventually accepted the five-year offer and, as noted, testified at trial.

**¶11** Washington contends the State's failure to disclose the foregoing email violated *Brady*, because the prosecutor's promise to offer a better plea deal depending on the "value" to the State of Braithwaite's trial testimony could have been used to impeach that testimony.

**¶12** The State must disclose all material information in its possession or control that "tends to mitigate or negate the defendant's guilt as to the offense charged, or which would tend to reduce the defendant's punishment therefor." Ariz. R. Crim. P. 15.1(b)(8); *see Brady*, 373 U.S. at 87 (failure to disclose favorable evidence material to guilt or punishment of the defendant upon request violates due process). Evidence that a defendant could use to impeach a State's witness is subject to this requirement. *See Strickler v. Greene*, 527 U.S. 263, 280 (1999). Exculpatory or impeachment evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). "[T]here is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id.* at 281. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109–10 (1976).

**¶13** The superior court found, and the State concedes, that the prosecutor was ethically obligated to disclose the email before trial because the prosecutor's expressed willingness to consider a more favorable sentence based on the "value" of Braithwaite's testimony could motivate Braithwaite to testify untruthfully against Washington (and her co-defendants) in a manner that would strengthen the prosecutor's case. We agree. The email was potential impeachment evidence and was subject to mandatory disclosure; the State's failure to do so was a *Brady* violation.

**¶14** However, at the hearing on the motion for new trial, Braithwaite testified he did not learn of the prosecutor's email or its contents until August 23, 2014, 12 days after the trial ended. After listening to all the evidence the superior court ruled as follows:

The e-mail at issue is impeachment evidence. In light of the totality of evidence presented during this trial, the Court finds this evidence would not substantially undermine any testimony of critical significance provided by Mr. Braithwaite. Mr. Braithwaite was cross-examined at length regarding his credibility, bias, and motivations for testifying at the trial of the co-defendants. Defense counsel for all defendants skillfully challenged all aspects of Mr. Braithwaite's testimony. The jurors were told about all of the benefits Mr. Braithwaite received from testifying and cooperating with the State. The fact his attorney wanted the prosecutor to give him a better deal than he already had (three years in prison instead of five years in prison) and the prosecutor was willing to consider a better offer would not "substantially undermine his testimony." The State never agreed to change the plea agreement or reduce Mr. Braithwaite's the [sic] sentence. Mr. Braithwaite denies he was aware of the content of the e-mail between his attorney and the prosecutor until after he testified at the trial of the co-defendants.

. . .

Regarding whether the evidence about the e-mail would have probably changed the verdict, the Court finds it would not. There was substantial evidence against each defendant without considering Mr. Braithwaite's testimony. The evidence presented at trial included surveillance evidence of all defendants, recorded conversations between the participants in the drug trafficking organization obtained as part of the Court Ordered Wiretap, and the testimony of many witnesses with first-hand knowledge about the drug trafficking organization and the participants in that organization. . . . The court further finds using the e-mail exchange to impeach Mr. Braithwaite would not "probably change the verdict" in light of the other abundant impeachment matters presented at trial.

¶15            Based on this record, we find the superior court did not abuse its discretion finding that the email's disclosure would not have affected the trial's outcome and a new trial was not required. *See State v. Arvallo*, 232 Ariz. 200, 206, ¶ 36 (App. 2013) (a superior court's finding that a *Brady* violation does not warrant a new trial is reviewed for an abuse of discretion).

**CONCLUSION**

¶16        Washington's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:   AA