NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JESSE MICHAEL ETIENNE, *Appellant.*

No. 1 CA-CR 20-0525
FILED 6-14-2022

Appeal from the Superior Court in Yavapai County
No. V1300CR201880344
The Honorable Michael R. Bluff, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Joy Bertrand Esq., Scottsdale
By Joy Bertrand
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Judge Peter B. Swann and Judge D. Steven Williams joined.

**B A I L E Y**, Judge:

¶1         Jesse Michael Etienne appeals his conviction and sentence for second-degree murder.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2         The trial evidence revealed the following: Cottonwood police officer Roger Scarim was monitoring traffic on a state highway one evening when a passing red car registered 107 miles per hour on his speed gun.  The posted speed limit was 55 miles per hour.

¶3         Officer Scarim followed the red vehicle northbound and activated his lights and siren.  After the speed limit decreased to 45 miles per hour, the officer observed the vehicle enter an intersection against a red traffic light without braking, and he lost sight of the vehicle's taillights.  Mistakenly thinking the driver turned off the car's lights, Officer Scarim continued the pursuit.

¶4         Meanwhile, B.A. and his wife were travelling southbound on the same road.  When they were approximately 2,000 feet north of the intersection where Officer Scarim lost sight of the speeding vehicle, they saw approaching headlights "kind of going all over the road" from a vehicle that "didn't even appear to be on four wheels" while heading toward them.  Seconds later, a northbound red car veered "all the way across right in front of" the couple before hitting the curb and flipping "end over end" into an adjacent ravine.  As B.A. and his wife stopped, they saw Officer Scarim drive by them northbound.  B.A. called 911 to report the crash, and dispatch relayed the information to Officer Scarim, who returned to the scene.

¶5         Officer Scarim located a heavily damaged red BMW sedan on its side approximately 60 feet down an embankment along the roadway.  Etienne, the car's driver, was standing near the vehicle, bleeding profusely from his head and face.  A battered human torso was on the ground next to the BMW's hood.

¶6         The ensuing investigation revealed a "debris field of biological matter" stretching more than 100 feet on the roadway northward from the crosswalk where the car Officer Scarim had been following drove through a red light.  The State's accident reconstructionist estimated the BMW had been travelling 100 to 101 miles per hour when it ran the red light and struck the victim in the crosswalk.  Investigators also learned that Etienne was issued four speeding tickets during the two-year period preceding the incident.

¶7           The jury returned a guilty verdict on the charged offense of second-degree murder.  Etienne timely filed two unsuccessful post-verdict motions, one a motion for judgment of acquittal under Arizona Rule of Criminal Procedure ("Rule") 20, and the other a Rule 24.1 motion for new trial based on purported instances of prosecutorial error, a lack of evidence supporting the verdict, and perceived errors in the jury instructions.  At sentencing, Etienne admitted he was on probation at the time of the offense, and the trial court imposed a presumptive 16-year sentence.

¶8           Etienne timely appealed.  We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and 13-4033(A).

## DISCUSSION

*I.      Sufficiency of the Evidence*

¶9           Etienne argues insufficient evidence supports his conviction. He claims no direct evidence established that the BMW he was driving struck the victim, and he contends the State failed to prove he acted with the requisite state of mind.

¶10          We review claims of insufficient evidence *de novo*, *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011), and our review is limited to whether substantial evidence exists to support the verdict, *see State v. Scott*, 177 Ariz. 131, 138 (1993); Ariz. R. Crim. P. 20(a) (directing courts to enter a judgment of acquittal "if there is no substantial evidence to support a conviction"). Substantial evidence is such proof that "reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt."  *State v. Mathers*, 165 Ariz. 64, 67 (1990) (quoting *State v. Jones*, 125 Ariz. 417, 419 (1980)).

¶11          In our review, we do not distinguish between the probative value of direct and circumstantial evidence.  *State v. Bible*, 175 Ariz. 549, 560 n.1 (1993), *abrogation on other grounds recognized by McKinney v. Ryan*, 813 F.3d 798, 815 (9th Cir. 2015).  Further, we evaluate the evidence in the light most favorable to sustaining the verdict, meaning we draw all reasonable inferences and resolve any evidentiary conflicts in support thereof.  *State v. Guerra*, 161 Ariz. 289, 293 (1989).

¶12          As relevant here, "[a] person commits second degree murder if[,] without premeditation [and] [u]nder circumstances manifesting extreme indifference to human life, the person recklessly engages in conduct that creates a grave risk of death and thereby causes the death of

another person." A.R.S. § 13-1104(A)(3). "'Recklessly' means, with respect to a result or to a circumstance described by a statute defining an offense, that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists." A.R.S. § 13-105(10)(c).

¶13　　Considering the circumstantial evidence, as outlined above, the jury could reasonably conclude that Etienne was driving at least 55 miles per hour over the speed limit at night when he failed to stop at a red light and struck the victim, killing him instantly. Based on B.A.'s and his wife's description of the red car crossing into oncoming traffic before and/or while crashing, the location of the victim's torso next to Etienne's damaged vehicle, and the location of the debris field of blood and body parts, any conclusion that someone other than Etienne struck the victim is not reasonable.

¶14　　Additionally, based on the same evidence, and especially in conjunction with the four speeding tickets issued to Etienne, the jury could reasonably conclude that he consciously disregarded the risk associated with driving 100 miles per hour through a red light; namely, the risk of striking and killing another motorist or pedestrian. And because the State does not have "to negate every conceivable hypothesis of innocence when guilt has been established by circumstantial evidence," *State v. Nash*, 143 Ariz. 392, 404 (1985) (citation omitted), Etienne's innocent explanations of the evidence do not require a contrary conclusion. Accordingly, substantial evidence supports the verdict, and the trial court properly denied Etienne's Rule 20 and Rule 24.1 motions on this basis. *See State v. Neal*, 143 Ariz. 93, 98 (1984) ("A Rule 20 motion is designed to test the sufficiency of the state's evidence."); *State v. Mincey*, 141 Ariz. 425, 432-33 (1984) (noting the similarity of Rule 20 and Rule 24.1 standards and deciding issues regarding sufficiency and the weight of the evidence without separate analyses); *State v. Davis*, 226 Ariz. 97, 99, ¶ 7 (App. 2010) (concluding the trial court did not abuse its discretion in denying a motion for new trial based on a claim that the verdict was against "the weight of the evidence" where the State presented evidence sufficient to support a verdict of guilt).

*II.　　Photographic Evidence*

¶15　　Etienne argues the trial court reversibly erred by admitting, over his objection, several "gory" crime scene photographs of the victim's torso in violation of Rules 401 and 403 of the Arizona Rules of Evidence. At the close of the State's case-in-chief, Etienne also unsuccessfully moved for a mistrial, arguing again that the photographs were improperly admitted.

**¶16**		We review a trial court's admission of photographs and denial of a mistrial motion for an abuse of discretion. *State v. Bocharski*, 200 Ariz. 50, 56, ¶ 27 (2001); *State v. Walton*, 159 Ariz. 571, 581 (1989), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 603 (2002).

**¶17**		To determine the admissibility of a purportedly gruesome photograph, the trial court considers the relevance of the photograph, its inflammatory nature, and whether its probative value is outweighed by the potential for prejudice. *State v. Cruz*, 218 Ariz. 149, 168-69, ¶ 125 (2008) (citations omitted); *see also* Ariz. R. Evid. 401 ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action."), 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). Relevant photographs that are gruesome or inflammatory may be admissible unless they are "admitted for the sole purpose of inflaming the jury." *State v. Morris*, 215 Ariz. 324, 339, ¶ 70 (2007) (citation omitted).

**¶18**		The torso photographs—each depicting the BMW and the adjacent torso from a different angle—were relevant because they helped illustrate what happened. *See State v. Rienhardt*, 190 Ariz. 579, 584 (1997), *abrogation on other grounds recognized by McKinney*, 813 F.3d at 816; *see also Morris*, 215 Ariz. at 339, ¶ 70 ("Photographs of a victim's body are always relevant because 'the fact and cause of death are always relevant in a murder prosecution.'" (citations omitted)). Indeed, the photographs were highly probative because, as noted, they depicted a key piece of evidence tying Etienne to the killing. And specifically, the visible state of the victim's torso was relevant for determining Etienne's excessive speed at the time of the collision. As the State's expert testified, a vehicle travelling 45 miles per hour can dismember a human body. In light of the photographs' relevance, the trial court acted within its discretion in determining the torso photographs were not introduced to inflame the jury. *See Rienhardt*, 190 Ariz. at 584 ("There is nothing sanitary about murder, and there is nothing in Rule 403, Ariz. R. Evid., that requires a trial judge to make it so."). The court did not err by admitting the photographs.[1]

---

[1]		Because the photographs were relevant to establish Etienne was driving over the speed limit when he struck the victim, we reject Etienne's argument that the prosecutor engaged in misconduct by proffering the

*III.     Prosecutorial Error*

**¶19**         Etienne contends he was entitled to a new trial based on multiple instances of prosecutorial error or misconduct during closing arguments.[2] We disagree.

**¶20**         We review the trial court's denial of a new trial motion based on claims of prosecutorial error for an abuse of discretion. *See generally Miller v. Superior Ct.*, 189 Ariz. 127, 129 (App. 1997); *see also State v. Lee*, 189 Ariz. 608, 616 (1997) (noting that, because the trial court is in the best position to determine the effect of a prosecutor's comments on the jury, we will not disturb the trial court's ruling absent an abuse of discretion).

**¶21**         "To prevail on a claim of prosecutorial [error], a defendant must demonstrate that '(1) misconduct is indeed present; and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying defendant a fair trial.'" *State v. Moody*, 208 Ariz. 424, 459, ¶ 145 (2004) (citation omitted).  That is, if a defendant establishes the presence of prosecutorial error, he must demonstrate that it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

---

evidence for purposes of determining his driving speed.  Although the State's case agent, who was trained and experienced in investigating vehicle accidents, testified that the significantly damaged torso's visible characteristics alone were insufficient to determine the driver's speed, it does not necessarily follow that the torso photographs were immaterial for such a purpose.  The case agent also estimated that Etienne was driving 100 miles per hour when he struck the victim, and the photographs were admissible to corroborate that testimony.  *See Morris*, 215 Ariz. at 339, ¶¶ 70-71 (concluding that photographic evidence of the victim's body was admissible for corroboration purposes).  The prosecutor's stated rationale for admitting the photographs was proper.

[2]     In 2020, our supreme court instructed that a distinction be made between prosecutorial "error" and "misconduct."  *See In re Martinez*, 248 Ariz. 458, 470, ¶ 47 (2020) ("When reviewing the conduct of prosecutors in the context of 'prosecutorial misconduct' claims, courts should differentiate between 'error,' which may not necessarily imply a concurrent ethical rules violation, and 'misconduct,' which may suggest an ethical violation.").  Cases decided before *Martinez* generally do not make that distinction, referring to instances of prosecutorial impropriety as "misconduct."  *See, e.g., id.* at 463-65, ¶¶ 9-19.

"Reversal on the basis of prosecutorial misconduct requires that the conduct be so pronounced and persistent that it permeates the entire atmosphere of the trial." *State v. Atwood*, 171 Ariz. 576, 611 (1992) (internal quotation marks and citations omitted), *disapproved on other grounds by State v. Nordstrom*, 200 Ariz. 229, 241, ¶ 25 (2001); *accord Lee*, 189 Ariz. at 616.

**¶22** Etienne points to five statements that he contends amounted to prosecutorial error. We address each in turn, keeping in mind that counsel have "wide latitude" when arguing to the jury. *State v. Jones*, 197 Ariz. 290, 305, ¶ 37 (2000).

**¶23** First, referring to the four speeding tickets, the prosecutor urged the jury to find that Etienne was "aware of the dangers of speeding." That comment was proper because it was a reasonable inference to draw from the evidence. *See Bible*, 175 Ariz. at 602 ("[D]uring closing arguments counsel may summarize the evidence, make submittals to the jury, urge the jury to draw reasonable inferences from the evidence, and suggest ultimate conclusions." (citations omitted)).

**¶24** Second, the prosecutor argued that Etienne "was aware of and consciously disregarded a substantial and unjustifiable risk that someone *might* die as a result of his conduct." (Emphasis added.) But the second-degree murder statute requires proof that a defendant "recklessly engages in conduct that creates a grave risk of death and thereby causes the death of another person." A.R.S. § 13-1104(A)(3). Nonetheless, whatever error occurred based on the prosecutor's use of the word "might" was cured by both the final jury instructions, which correctly mirrored the statutory language of § 13-1104(A)(3), and the prosecutor's correction when he immediately thereafter stated: "[D]efendant was aware of and consciously disregarded a substantial and unjustifiable risk that someone will die as a result of his conduct." On this record, we conclude that the prosecutor's use of the word "might" did not affect the verdict.

**¶25** Third, during initial closing argument, the prosecutor stated: "The State is not required to prove the why or defendant's motive for driving at over 100 miles per hour through a red light striking and killing [the victim] in the crosswalk. The State just needs to prove he did this." In rebuttal, the prosecutor continued:

> The State does not need to prove defendant's intent or knowledge. The State needs to prove the defendant acted recklessly; that defendant is aware of and consciously disregards a substantial and unjustifiable risk that his conduct

will result in death.  That is what the State needs to prove, not the why.

¶26        Despite Etienne's objection, the prosecutor was not arguing that the State did not bear the burden of proving Etienne's mental state.  Rather, the prosecutor correctly informed the jury that second-degree murder requires proof of recklessness, not that Etienne intended or knew the victim would die as a result of his driving.  Further, the prosecutor's statement that proof of motive was not required correctly reflected the law.  *See State v. Hunter*, 136 Ariz. 45, 50 (1983) (noting that, although motive is relevant, it is not an element of murder).

¶27        Fourth, the prosecutor referred to defense counsel's cross-examination of the accident reconstructionist on the topic of converting miles per hour to feet per second and noted that the expert "corrected defense counsel on her math, and she agreed she was mistaken."  The prosecutor's statement correctly reflected the exchange between defense counsel and the witness, and viewed in context, it was not denigrating toward defense counsel as Etienne asserts.  Rather, the prosecutor was reminding the jurors that, consistent with their instructions, "what defense counsel and I say is not evidence."  We discern no error.

¶28        Fifth, as he approached the conclusion of his initial closing argument, the prosecutor told the jury:

> Don't be misled.  Don't be confused.  The defense is going to challenge and attack the two very things they know.  They know that demonstrates extreme indifference to human life; running a red light at over 100 miles per hour.  Don't believe them.  Don't be fooled by them.  Confusion is the jury's biggest problem.  If defense counsel is able to confuse you, she will put doubt in your minds.

¶29        Defense counsel objected, arguing at the ensuing bench conference that the prosecutor was "maligning my integrity."  The court sustained the objection and asked defense counsel, "How do you suggest we correct it?"  Defense counsel responded, "I think the State has to say that . . . they are in no way maligning my integrity."  When the proceedings resumed in front of the jury, the prosecutor did as suggested, stating, "I would like to say that in no way are my comments that I'm making right now [] maligning the integrity of defense counsel.  Don't be confused by the evidence that may be presented to you."  Given the prosecutor's latter

statement, we conclude that any initial error by the prosecutor did not impact the verdict.

¶30        In sum, none of the prosecutor's challenged statements standing alone denied Etienne a fair trial.  They also did not cumulatively do so because the prosecutor's errors were not "persistent and pervasive," and nothing in the record indicates the prosecutor intentionally erred to prejudice Etienne.  *See State v. Hulsey*, 243 Ariz. 367, 394, ¶ 122 (2018) ("When assessing cumulative error, this Court considers whether persistent and pervasive misconduct occurred and whether the cumulative effect of the incidents shows that the prosecutor intentionally engaged in improper conduct and did so with indifference, if not specific intent, to prejudice the defendant." (internal quotation marks and citation omitted)).  Accordingly, Etienne was not entitled to a new trial on the basis of prosecutorial error or misconduct.

*IV.    Jury Instructions*

¶31        Etienne argues the trial court erred by denying his request for two jury instructions.  We review the refusal to give requested jury instructions for an abuse of discretion, deferring to the trial court's evaluation of the evidence.  *State v. Wall*, 212 Ariz. 1, 3, 5, ¶¶ 12, 23 (2006).  A party is entitled to a jury instruction on any theory reasonably supported by the evidence, *Moody*, 208 Ariz. at 467, ¶ 197, but a court does not err by refusing to give an instruction that "does not fit the facts of the particular case[] or is adequately covered by the other instructions," *State v. Hussain*, 189 Ariz. 336, 337 (App. 1997) (citation omitted); *see also State v. Mott*, 187 Ariz. 536, 546 (1997) ("A trial court is not required to give a proposed instruction when its substance is adequately covered by other instructions." (citation omitted)).  Conversely, "[a] court abuses its discretion by giving an instruction contrary to law or unsupported by the record."  *State v. Aragon ex rel. Pima Cnty.*, 252 Ariz. 525, 528, ¶ 6 (2022) (citations omitted).

¶32        Etienne contends he was entitled to an instruction under A.R.S. § 28-672, which makes it a class 1 misdemeanor to seriously injure or kill someone as a result of violating a traffic regulation.  According to Etienne, that offense is a "proper" lesser-included offense of second-degree murder and should have been available for the jury's consideration.

¶33        A lesser-included offense is an offense "composed solely of some but not all of the elements of the greater crime so that it is impossible to have committed the crime charged without having committed the lesser one."  *State v. Celaya*, 135 Ariz. 248, 251 (1983) (citation omitted).  This court

has recently addressed whether violation of § 28-672 is a lesser-included offense of second-degree murder and concluded it is not. *See State v. Teran*, 1 CA-CR 21-0148, 2022 WL 1146355, *6, ¶ 36 (Ariz. App. Apr. 19, 2022). We perceive no reason to depart from *Teran*. The trial court therefore did not abuse its discretion by denying Etienne's request to instruct the jury under § 28-672. *See Wall*, 212 Ariz. at 3, ¶¶ 13-14 (noting the trial court is required to instruct only on "necessarily included offenses"); *accord State v. Gipson*, 229 Ariz. 484, 486, ¶ 14 n.2 (2012) ("An offense is necessarily included 'when it is lesser included' and 'the facts of the case as presented at trial are such that a jury could reasonably find that only the elements of a lesser offense have been proved.'" (quoting *Wall*, 212 Ariz. at 3, ¶ 14)).

**¶34** Etienne also asserts the trial court erred by denying his request for a causation instruction under Revised Arizona Jury Instructions ("RAJI") Statutory Criminal Instruction 2.03 (5th ed. 2019). That superseding cause instruction reads as follows:

> Conduct is the cause of a result when both of the following exist:
>
> 1. But for the conduct the result in question would not have occurred.
>
> 2. The relationship between the conduct and result satisfies any additional causal requirements imposed by the definition of the offense.
>
> In order to find the defendant guilty of [the crime], you must find that the [death] [injury] was proximately caused by the acts of the defendant.
>
> The proximate cause of a [death] [injury] is a cause which, in natural and continuous sequence, produces the [death] [injury], and without which the [death] [injury] would not have occurred.
>
> Proximate cause does not exist if the chain of natural effects and cause either does not exist or is broken by *a superseding intervening event* that was unforeseeable by the defendant and, with the benefit of hindsight, may be described as abnormal or extraordinary.

The State must prove beyond a reasonable doubt that a superseding intervening event did not cause the [death] [injury].

RAJI Stat. Crim. 2.03 (emphasis added).

¶35 "[B]oth 'but for' causation and proximate cause must be established in a criminal case." *State v. Marty*, 166 Ariz. 233, 236 (App. 1990) (citation omitted). Under the facts of this case, the State was required to prove that "but for" Etienne's conduct, the victim's death would not have occurred. *See id.*; *see also* A.R.S. § 13-203(A)(1) (stating that conduct is the cause of a result when the result in question would not have occurred but for the conduct at issue). To establish proximate cause, the State was required to establish that the difference between the result intended and the harm actually suffered was not so extraordinary that it would be unfair to hold Etienne responsible for the victim's death. *See Marty*, 166 Ariz. at 237 (citation omitted). Proximate cause may be interrupted when "another cause 'with which the defendant was in no way connected intervenes, and but for which death would not have occurred.'" *Id.* (citations omitted). An intervening cause is a superseding event, but only when unforeseeable and, with benefit of hindsight, abnormal or extraordinary. *State v. Bass*, 198 Ariz. 571, 575-76, ¶¶ 11-13 (2000).

¶36 "To determine whether a defendant is entitled to a superseding cause jury instruction, a court should *first* determine whether the event is an intervening event." *Aragon*, 252 Ariz. at 530, ¶ 17. "[A]n intervening event is 'one that actively operates in producing harm after the original actor's act or omission has been committed.'" *Id.* (quoting *Herzberg v. White*, 49 Ariz. 313, 321 (1937)) (ellipsis and additional citations omitted). "[W]here the defendant's course of conduct actively continues up to the time the injury is sustained, then any outside force which is also a substantial factor in bringing about the injury is a concurrent cause of the injury and never an intervening force." *Id.* at 529, ¶ 11 (internal quotation marks and citations omitted).

¶37 Here, the victim's dark clothing and theoretical jaywalking[3] did not "actively operate" to cause his death after Etienne ran the red light

---

[3] The debris field was the only evidence establishing the victim's location at the time he was struck, and it indicated he was in the intersection's crosswalk. Nonetheless, Etienne argued to the jury that vehicles passing through the debris field possibly disrupted it, thereby indicating that the point of impact could have been outside the crosswalk.

at a high rate of speed. The victim's behavior was not an intervening event and therefore not a superseding cause. *See id.* at ¶ 10 (explaining that, if an event is not an intervening one, it is not a superseding cause for purposes of determining whether a defendant is entitled to a superseding cause instruction). Accordingly, the trial court did not abuse its discretion in denying the causation instruction.

**¶38** Because we have determined the trial court correctly denied Etienne's requested jury instructions, the court did not err in denying Etienne's motion for new trial on this basis.

*V.* *Sentence*

**¶39** Finally, Etienne argues his 16-year flat-time sentence was improperly enhanced because, as compared to other vehicular homicide cases, it reflects an arbitrarily harsh outcome in violation of his due process rights. But the trial court was required by statute to impose the sentence because Etienne was on probation at the time of the offense. *See* A.R.S. §§ 13-708, -710(A). Etienne's argument is more properly made to the Arizona Legislature, not this court. *See State v. Jackson*, 186 Ariz. 490, 491-92 (App. 1996).

**¶40** Etienne's similar claim—that his sentence violates the Eighth Amendment's and Arizona's prohibitions against cruel and unusual punishment—is without merit. *See* U.S. Const. amend. VIII; Ariz. Const. art. 2, § 15; *see also State v. Long*, 207 Ariz. 140, 144, ¶ 21 n.2 (App. 2004) (treating the provisions as coterminous). Etienne engaged in highly reckless conduct that endangered other motorists and led to the violent death of an innocent person. In these circumstances, a 16-year prison term is not disproportionate, much less grossly so. *See Jackson*, 186 Ariz. at 492.

**CONCLUSION**

**¶41** Etienne's conviction and sentence are affirmed.

